IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AMOS BALDWIN, *et al.*, ) | |
| ) | CASE NO. 1:18 CV 1078 |
| Plaintiffs, ) | |
| ) | |
| v. ) | JUDGE DONALD C. NUGENT |
| ) | |
| ALLSTATE FIRE AND CASUALTY ) | |
| INSURANCE COMPANY, ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| Defendant. ) | |

This matter comes before the Court upon cross-motions for summary judgment. Defendant Allstate Fire & Casualty Insurance Company, ("Allstate") filed a Motion for Summary Judgment (ECF #52), and Plaintiffs, Amos and Laura Baldwin filed a Motion for Partial Summary Judgment (ECF #51). The briefing was completed on December 23, 2019, and both parties had the opportunity to orally argue their motions at a status conference on December 30, 2019. (ECF #56, 57, 58, 59, 60). The parties agree that there is no factual dispute which would be relevant to the issue of coverage or Plaintiffs' claim of bad faith. Both sides, therefore, are asking the Court to decide these issues based on the agreed facts and the language of the

applicable contracts. If the Court finds that Plaintiffs were covered under the policy, Plaintiff maintains that the question of damages would remain a triable issue.

## **PROCEDURAL AND FACTUAL HISTORY**

Plaintiffs originally filed this action in Cuyahoga County Court of Common Pleas against Defendant, Allstate, seeking coverage under their insurance contract with Allstate. The Complaint alleged that Mr. Baldwin suffered bodily injury in an automobile accident in which he was hit from behind by an unidentified driver. (ECF #1-2). Mr. Baldwin's wife also claimed damages for loss of consortium and the cost of Mr. Baldwin's treatment. (Id.) Plaintiffs included a bad faith claim against Allstate. (Id.).

Allstate removed the case to federal court. (ECF #1). The parties both admit to the authenticity of the certified copy of the insurance policy attached as Exhibit A to the Plaintiff's Complaint. (ECF #1-2, 4). Plaintiffs later filed a First Amended Complaint naming Danielle Sanders as a defendant. (ECF #15). Ms. Sanders is a Georgia resident who is now known as Danielle Key Wright. Allstate did not object. (ECF #14). The First Amended Complaint alleged that Ms. Wright was the driver of the car that hit Mr. Baldwin, causing his injuries. Following discovery, it was determined that Ms. Wright had been misidentified and was not the driver of the vehicle at issue, nor was she present at, or in any way connected to the accident. (ECF #46). She was, consequently, dismissed from the action without opposition. (ECF #55).

For purposes of these motions, the parties agree to the following facts. An unidentified driver struck Mr. Baldwin's vehicle from behind on May 20, 2016 at the intersection of South Taylor Road and Terrace Boulevard in the City of East Cleveland, Ohio. Mr. Baldwin was

stopped at a traffic signal at the time of impact. The impact was severe enough to cause damage to Mr. Baldwin's vehicle and to cause him bodily injury. Mr. Baldwin required treatment for his injuries.

The person who hit Mr. Baldwin was a man in his late thirties or early forties with black hair and was driving a grey Dodge truck. (ECF #46-1: A. Baldwin Depo. at 45-46, 49-50). This other driver stopped and came over to Mr. Baldwin to apologize explaining that the brakes had gone out on his truck. He did not give Mr. Baldwin his name, insurance information, or any contact information. The man did remain at the scene until the East Cleveland Police arrived, and spoke with the police. (ECF #46-1: A. Baldwin Depo. at 46-47). After speaking with the police officer, the man left the scene.

There is no evidence that the other driver left his name or any other identifying information with the officer. When Mr. Baldwin sought to obtain the driver's information from the police, he received a report that did not include any identifying information for the other driver or the vehicle that struck him. (ECF #51-3). Mr. Baldwin later received a supplemental report. The supplemental report misidentified the other vehicle as a white Dodge Ram that was rented to Ms. Wright at the time of the accident. (ECF #51-4). Neither Ms. Wright, nor a white Dodge Ram were actually involved in or present at the time of the accident. (ECF #46- 1, 46-2). The supplemental report did not identify the driver of the other vehicle, or identify any insurance covering the driver or the vehicle. (ECF #51-4).

At the time of the accident, Mr. Baldwin was insured by Defendant, Allstate. That policy provides coverage for medical payment benefits, and for damages a person is "legally entitled to recover from the owner or operator of an uninsured auto." (ECF #1-2, at 41). An "uninsured

auto" is defined, in relevant part, as follows:

> 4. a hit-and-run motor vehicle which causes bodily injury to an insured person or an additional insured person. The identity of both the operator and the owner of the vehicle must be unknown; however, independent corroborative evidence must exist to prove that the bodily injury of the insured person or additional insured person was proximately caused by the negligence or intentional acts of the unidentified operator of the motor vehicle. The testimony of any insured person or additional insured person seeking recovery from us shall not constitute independent corroborative evidence unless the testimony is supported by additional evidence. The accident must be reported within 24 hours to the proper authorities. We must be notified within 30 days from the date of the accident. If the insured person or additional insured person was occupying a vehicle at the time of the accident, we have a right to inspect it.

Plaintiff claims that the medical expenses for treatment of his accident related injuries totalled $19,300.00. Prior to the filing of this lawsuit, and following the receipt of a demand letter, Allstate eventually offered Mr. Baldwin $5,000.00 in medical coverage plus an additional $5,994.00 to avoid suit.

## STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at

250.

Insurance coverage questions are generally questions of law for the Court to decide. *See, Stafford v. Jewelers Mut. Ins. Co.*, 554 Fed. Appx 360, 373 (6th Cir. 2014). "[W]ords and phrases used in an insurance policy must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined." *Sauer v. Crews*, 140 Ohio St.3d 314, 18 N.E.3d 410 (2014)(citations omitted). It is with these standards in mind that the instant Motions must be decided.

The case was brought to determine whether the uninsured motorist coverage in Mr. Baldwin's policy provides coverage for the accident he suffered on May 20, 2016, and whether Allstate was operating in bad faith when it denied his claim. Both parties agree that there are no genuine issues of material fact, and that the Court may determine the questions of liability and bad faith based on the contract language of the policy and the agreed facts.

## ANALYSIS

A. <u>Uninsured Motorist Coverage</u>

The policy provides coverage for "a hit-and-run motor vehicle which causes bodily injury to an insured person or an additional insured person." It does not define the phrase "hit-and-run motor vehicle." When interpreting a contract, "the role of the court is to give effect to the intent of the parties to the agreement" by examining the policy as a whole. *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 115 Ohio St.3d 306, 875 N.E.2d 31 (2007). Courts "presume that the intent of the parties is reflected in the language used" throughout the policy. *Id.* The only language within

the contract, which may further elucidate the meaning of the phrase "hit-and-run vehicle" is found in the following sentence, which reads: "The identity of both the operator and the owner of the vehicle must be unknown. . . ." Allstate argues that the unknown identity requirement does not define "hit-and-run vehicle," but rather provides an additional limitation. Whether this is meant as an additional limitation or a defining phrase, however, it sheds some light on the intent of the parties with regard to this category of coverage, clarifying that it is meant to provide insurance when neither the owner nor the driver of the other responsible vehicle has been identified. Further, it is reasonable to assume that the reason an insured seeks coverage against uninsured drivers is to ensure that they are covered if they are in an accident that is not their fault, even if the other driver cannot be lacks insurance, or cannot be identified.

In order to determine the parties' intent, the courts will also consider whether a disputed phrase has a discernible "plain and ordinary meaning." *See, Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241, 245-256, 374 N.E.2d 146 (1978). Allstate argues that "hit-and-run" has a plain meaning that does not apply to the circumstances of this case, but does not, in any of its briefing, actually provide a working definition for the term. They boldly assert that "all licensed drivers within the State of Ohio" understand a common meaning for "hit-and-run," without explaining what that meaning is. If it is true that all licensed Ohio drivers have a common understanding of the term, it would follow that this understanding comes from their knowledge of Ohio's hit-and-run law. That law requires a driver to "remain at the scene of the accident or collision until the operator has given the operator's name and address and, if the operator is not the owner, the name and address of the owner of that motor vehicle, together with the registered number of that motor vehicle to all of the following. . . any person injured...the operator... of any

motor vehicle damaged . . . [and] the police officer at the scene. . . ." O.R.C. §4549.02.[1] In this case, there is no dispute that Mr. Baldwin, an injured person who operated a motor vehicle damaged in the accident, was not provided any identifying information.[2] Thus, if there is a plain and common meaning for hit-and-run in Ohio, it be reasonable to assume that it comports with the legal definition that Ohio drivers are tasked with understanding and following.

Even if the Court treats the phrase as ambiguous, however, Allstate fails to provide a reasonable interpretation that makes sense in the context of this insurance policy. Rather than attempt to define "hit-and-run vehicle," Allstate treats it as a "know it when you see it" sort of event. They argue that because the driver who hit Mr. Baldwin stopped, spoke to him, remained present at the scene until police arrived, and spoke to the police, Mr. Baldwin was not struck by a "hit-and-run motor vehicle." They also argue that the driver "gave his information to the police officer." However, there is no evidence to support this assumption. In fact, the police report contained no identifying information on the driver, and originally no information on the vehicle. A supplemental report provided later still provided no information about the driver, and misidentified the vehicle. Thus, there is no evidence that the driver ever provided any identifying information to the police or Mr. Baldwin, despite having stopped and conversed with both following the accident.

---

[2] If the police intervened and prevented such distribution of information, this would provide the other driver with a defense to any criminal charge, but does not alter the fact that he fits the legal definition of a hit-and-run. Nothing in the insurance contract indicates that the driver of the hit-and-run vehicle must be criminally liable for failure to stop before coverage will apply.

-7-

Allstate contends that there is no hit-and-run if the responsible driver stops following the accident, apologizes, remains at the scene until police arrive, and cooperates fully with the police. The problem is there is no evidence that the driver at issue in this case meets all of these criteria, as the evidence does not support a finding that he cooperated fully with the police by providing truthful and accurate identifying information. Allstate does not identify which, if any, of the above identified conditions, if absent, would result in a hit-and-run under the policy. Do they believe this coverage to apply if a driver stops as a result of the accident, but continues on without engaging with the other driver? Does it apply if they stop to see if the other driver is ok but leaves without talking to the driver; if they stop and talk to the driver but leave before authorities arrive; or, if the driver stays on scene and talks to authorities but provides fake identification? Or, do they believe it only applies if the responsible driver literally never stops their vehicle and simply keeps driving? Nothing in their arguments suggests a definition of "hit-and'-run" that would make these coverage questions any clearer.

Plaintiffs, by contrast, define "hit-and-run vehicle" as a vehicle that causes a collision and whose driver leaves without providing adequate identifying information. This definition is reasonable. It has been adopted by the Ohio legislature as the basis for defining criminal hit-and-run, and aligns with the general purpose of the underinsured/uninsured motorist coverage in this policy, which is to provide insurance coverage for accidents caused by other drivers who cannot be held financially responsible. This definition also is supported by the unknown identity requirement immediately following the phrase in the policy.

Insurance policies are to be interpreted strictly against the drafter and in favor of the non-drafting party. *Cent. Realty Co. v. Clutter*, 62 Ohio St.2d 411, 413, 406 N.E.2d 515 (1980). Any

ambiguity in an insurance contract shall, therefore, be interpreted against the insurer and in favor of the insured, so long as the insured's position is reasonable. *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380 (1988). In this case, the phrase "hit-and-run vehicle" is ambiguous, but when viewed in context of the entire policy can be reasonably construed to refer to a vehicle whose driver causes a collision and who leaves the scene without providing adequate identifying information.

The Baldwins bear the burden of proving the existence of coverage under this accepted definition of the term "hit-and-run vehicle." They have satisfied that burden. There is no dispute that another driver, who is currently unidentified, caused a collision that injured Mr. Baldwin and damaged his car. Further, Allstate has no evidence to show that this other driver, despite stopping and talking with Mr. Baldwin and the police, provided adequate and/or truthful information about his identity or the identification information for the car that he was driving. The only admissible evidence of what was communicated between the driver and the police is the content of the police report and supplemental report, neither of which identify the driver or correctly identify the vehicle involved in the accident.

For these reasons, the Court finds that the Allstate policy included uninsured motorist insurance that covers Mr. Baldwin for the accident that occurred on May 20, 2016. The amount of damages cannot be determined from the information currently before the Court and remains an issue for trial.

B. Bad Faith Claim

In Ohio, an insurer owes its insured a duty of good faith. *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983). When an insurer breaches that duty in connection with the payment of claims, an insured may bring a claim for bad faith. An insurer fails to exercise good faith when its refusal to pay a claim "is not predicated upon circumstances that furnish reasonable justification therefore." *Zoppo Homestead Ins. Co.*, 71 Ohio ST.3d 552, 644 N.E.2d 397 (1994). Bad faith may also be found if an insurer unreasonably delays the payment of a claim. Allstate denied coverage for medical bills over and above the $5,000.00 medical payments limitation, and all claims for pain and suffering, loss of consortium and other damages allegedly owed under the policy's uninsured motorist coverage.

Allstate refused further payment based upon their belief that Mr. Baldwin's accident was not covered under the uninsured motorist insurance clause of his policy. Prior to the filing of this suit, Allstate had a reasonable basis for believing that the uninsured motorist coverage in his policy did not apply. The fact that the Court eventually disagreed with Allstate's conclusion does not mean that the position was not taken in good faith. Allstate's position on this matter was neither arbitrary nor capricious. According to Mr. Baldwin, the other driver involved in the accident stopped, spoke with him, apologized, waited for the police, and spoke to the police before leaving the scene. Mr. Baldwin also testified during his deposition that the responding officer prevented him from speaking further with the other driver, and told him that he could get identifying information from the police at a later time. Later in the case, the police provided information indicating that the vehicle involved was a rental car, which, presumably would have been insured. Based on this information, Allstate had reasonable grounds for denying uninsured

coverage prior to the filing of this suit. Evidence uncovered during the course of these proceedings contradicted some of the early information, including disproving that the car at issue was the identified rental car, and uncovering that the police had not collected or recorded any identifying information on the other driver. Although these newly discovered facts supported Mr. Baldwin's claim for coverage, their existence does not mean Allstate's original stance was unreasonable or unfounded. Plaintiffs have failed to show that Allstate acted in bad faith by denying coverage, based upon the information known to them at the time.

Plaintiffs also fail to establish bad faith based on their other arguments relating to Allstate's alleged failure to pay full out-of-pocket medical expenses and unreasonably denying payment. First, if the decision to deny uninsured motorist coverage was not made in bad faith, the amount of damages claims under such coverage is irrelevant to the determination not to pay. Further, Plaintiffs provide no evidence of when they sought the $5,000.00 medical payment, when it was paid, or whether any alleged delay occurred specifically with that undisputed amount. Therefore, they have not met their burden of showing any basis for a bad faith claim on the issues of damage amounts or delayed payments, and summary judgment for the Defendants is warranted.

## CONCLUSION

For the reasons set forth above, the Court finds that the uninsured motorist provision of the policy does provide coverage for the accident at issue, but, there is no evidence that Allstate acted in bad faith when denying the claim. Accordingly, Defendant, Allstate's Motion for Summary Judgment (ECF #52) is GRANTED in Part, and DENIED in Part, and Plaintiffs'

Motion for Partial Summary Judgment is also GRANTED in Part and DENIED in part. (ECF #51). Plaintiffs are entitled to coverage under the policy and Defendants are entitled to Summary Judgment on the claim of bad faith. Trail remains set for March 9, 2020 at 8:30 a.m. on the issue of damages. IT IS SO ORDERED.

*/s/ Donald C. Nugent*
DONALD C. NUGENT
United States District Judge

DATED: January 14, 2020